UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**MARGARET GARDNER,**

    **Plaintiff,**

-vs-

**NAVIENT SOLUTIONS, INC. and**    **CASE NO:**
**STUDENT ASSISTANCE CORP.,**

    **Defendants.**

_____/

## COMPLAINT

Plaintiff, MARGARET GARDNER, by and through her undersigned counsel, sues the Defendants, NAVIENT SOLUTIONS, INC., and STUDENT ASSISTANCE CORP., and in support thereof respectfully alleges the following:

1. Plaintiff alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

## INTRODUCTION

2. The TCPA was enacted to prevent companies like NAVIENT SOLUTIONS, INC. and STUDENT ASSISTANCE CORP. from invading American citizen's privacy and prevent abusive "robo-calls."

1

3. "The TCPA is designed to protect individual consumers from receiving intrusive and unwanted telephone calls." *Mims v. Arrow Fin. Servs., LLC*, -US--, 132 S.Ct., 740, 745, 181, L.Ed. 2d 881 (2012).

4. "Senator Hollings, the TCPA's sponsor, described these calls as 'the ***1256** scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.'" 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

5. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014."

https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal

## JURISDICTION AND VENUE

6. This is an action for damages exceeding Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

7. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, Federal Question Jurisdiction, as this action involves violations of the TCPA and/or by 28 U.S.C. § 1332, diversity jurisdiction.

8. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii).  See *Mims v. Arrow Fin. Servs., LLC*, 132 S.Ct. 740, 748 (2012) and *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1249 (11th Cir. 2014).

9. Venue is proper in this District because the Plaintiff resides in this District (Gwinnett County), the phone calls were received in this District, and the Defendant transacts business in Gwinnett County, Georgia.

## **FACTUAL ALLEGATIONS**

10. Plaintiff is a natural person, and citizen of the State of Georgia, residing in Gwinnett County, Georgia, and resides in this District.

11. Defendant, NAVIENT SOLUTIONS, INC. (hereinafter "NSI"), is a corporation which was formed in Delaware with its principal place of business at 2001 Edmund Halley Dr., Reston, VA 20191-3436 and conducting business in the State of Georgia.

12. Defendant, STUDENT ASSISTANCE CORP. (hereinafter "SAC"), is a corporation with its principal place of business in Delaware, wherein its registered agent is Corporation Service Company, 2711 Centerville Rd., Suite 400, Wilmington, DE 19808.

13. The conduct of Defendant which gives rise to the cause of action herein alleged occurred in this District, Gwinnett County, Georgia, by the Defendant's placing of illegal calls to Gwinnett County, Georgia.

14. Defendant NSI, at all material times, was attempting to collect on a student loan account belonging to a third party, (hereinafter the "subject account"), which was issued and serviced by NSI.

15. Defendant SAC, at all material times, was attempting to "counsel" the Plaintiff regarding the delinquent student loans belonging to a third party that were serviced by Defendant NSI.

16. The Defendants each knowingly and/or willfully harassed and abused Plaintiff on numerous occasions by calling Plaintiff's cellular telephone number, sometimes multiple times per day, after Plaintiff expressly revoked her consent to be called by the Defendants, from approximately May, 2015 through the filing of this complaint, with such frequency as can reasonably be expected to harass, all in an effort related to the collection of the subject account.

17. Upon information and belief, some or all of the calls the Defendant made to Plaintiff's cellular telephone number were made using an "automatic telephone dialing system" which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator (including but not limited to a predictive dialer) or an artificial or prerecorded voice; and to dial such numbers as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls").

18. Each of the autodialer calls the Defendant made to Plaintiff's cellular telephone number after approximately August, 2015, was done so after she had revoked consent and without the "prior expressed consent" of the Plaintiff. This is due to Plaintiff advising an agent of one of the Defendants on or about August 2015 that she wanted the calls to stop.

19. Plaintiff is the regular user and carrier of the cellular telephone number, (678) ***-2545, and was the called party and recipient of Defendant's autodialer calls.

20. The autodialer calls from Defendant came from the telephone numbers including but not limited to 317-550-5596 and when those numbers are called, a prerecorded voice or a representative answers and identifies the company as "Navient" or a subsidiary thereof.

21. On or about August 2015, Plaintiff told a representative from one of the Defendants that she wanted the calls to her phone to stop.

22. Since that conversation in August 2015, Plaintiff has told numerous representatives from Defendants to stop calling her but the calls have continued.

23. Despite Plaintiff informing Defendant to stop calling, the Defendant's autodialer calls to Plaintiff's cellular phone continued after August 2015 including but not limited to the following calls:

**From Phone Number 317-550-5596**:

i. August 17, 2015 (x2);
ii. August 18, 2015 (x5);
iii. August 19, 2015 (x4); and
iv. August 20, 2015 (x4).

24. The Defendant has a corporate policy to use an automatic telephone dialing system or a pre-recorded or artificial voice, and to make autodialer calls just as they did to Plaintiff's cellular telephone in this case, with no way for the called party and recipient of the calls, or the Defendant, to permit the removal of the incorrect number.

25. Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of autodialer calls, well-beyond August, 2015, when Plaintiff first advised Defendant(s) to stop calling Plaintiff.

26. Defendant's corporate policies are structured as to continue to call individuals like the Plaintiff, despite the individual, like Plaintiff, advising Defendant to stop calling.

27. Defendant's corporate policies provided no means for the Plaintiff to have her cellular number removed from the call list, or otherwise permit the cessation of and/or suppression of calls to Plaintiff.

28. Defendant has numerous other federal lawsuits pending against them alleging similar violations as stated in this complaint.

29. Defendant has numerous complaints against them across the country asserting that their automatic telephone dialing system continues to call the wrong people or people who have revoked consent to be called.

30. Defendant knowingly employed methods and/or has a corporate policy designed to harass and abuse individuals and has set up their autodialer in a manner which makes it virtually impossible for the autodialer calls to stop.

31. Defendant knowingly employed methods that did not permit the cessation of or suppression of autodialer calls to Plaintiff's cellular telephone.

32. Due to Defendant's constant autodialer calls and demands for payment Plaintiff has suffered statutory and actual damages in the form of emotional distress, frustration, worry, anger, and/or loss of capacity to enjoy life.

## COUNT I
### (Violation of the TCPA by NSI)

33. Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-two (32) above as if fully stated herein.

34. None of Defendant's autodialer calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

35. Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's prior express consent.

36. The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant on or about August 2015, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent  Defendant believed it had to contact her, and told Defendant to stop calling her.

37. Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, NAVIENT SOLUTIONS, INC., for statutory damages, actual damages, treble damages, punitive damages, costs, interest, and any other such relief the court may deem just and proper.

## COUNT II
**(Violation of the TCPA by SAC)**

38. Plaintiff re-alleges and incorporates Paragraphs one (1) through thirty-two

(32) above as if fully stated herein.

39.     None of Defendant's autodialer calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. § 227(b)(1)(A).

40.     Defendant violated the TCPA, with respect to all of its autodialer calls made to Plaintiff's cellular telephone number after Plaintiff revoked consent to be called and without Plaintiff's prior express consent.

41.     The Defendant willfully and/or knowingly violated the TCPA, especially for each of the autodialer calls made to Plaintiff's cellular telephone after Plaintiff notified Defendant on or about August 2015, when Plaintiff verbally withdrew, revoked, and/or terminated any alleged consent  Defendant believed it had to contact her, and told Defendant to stop calling her.

42.     Defendant repeatedly placed non-emergency telephone calls to Plaintiff's cellular telephone using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant, STUDENT ASSISTANCE CORP., for

statutory damages, actual damages, treble damages, punitive damages, costs, interest, and any other such relief the court may deem just and proper.

Respectfully submitted,

/s/ Octavio Gomez
Octavio "Tav" Gomez, Esquire
Georgia Bar #:  617963
Morgan & Morgan, Tampa, P.A.
201 North Franklin Street, 7th Floor
Tampa, FL 33602
Tele:  (813) 223-5505
Fax:  (813) 223-5402
TGomez@forthepeople.com
JKneeland@forthepeople.com
FKerney@forthepeople.com
Attorney for Plaintiff